UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CARLOS ABREU,                                    :

        Plaintiff,                  :     **REPORT AND**
                                                      **RECOMMENDATION**
  -v.-                                              :
                                                      04 Civ. 7778 (DAB) (GWG)
C.O. NICHOLLS,                                   :

        Defendant.                 :
-----------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

In this action under 42 U.S.C. § 1983, pro se plaintiff Carlos Abreu, currently incarcerated at Attica Correctional Facility, claims that a City of New York Correction Officer, identified only as "C.O. Nicholls," assaulted him while he was housed at Rikers Island and later denied him access to medical treatment. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated below, Nicholls' motion should be granted.

I. INTRODUCTION

    A. Factual Background

The Court accepts as true Abreu's version of the facts where supported by admissible evidence and draws all factual inferences in Abreu's favor. See, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).

Abreu was incarcerated at Rikers Island from July 9, 2004 through July 22, 2004, where he was in the custody of the New York City Department of Correction. See Answer of Plaintiff Abreu to Defendant Nicholl's [sic] Statement of Undisputed Facts 56.1 Statement, filed Mar. 19, 2007 (Docket #39) ("Pl. 56.1"), ¶ 1; Defendant Nicholl's [sic] Statement of Undisputed Facts Pursuant to Rule 56.1, dated Feb. 5, 2007 ("Def. 56.1") (attached to Notice of Motion, filed Feb.

20, 2007 (Docket #36) ("Def. Mot.")), ¶ 1; Plaintiff's Memorandum of Law in Opposition to Defendants' [sic] Reply Memorandum of Law in Further Support of Her Motion for Summary Judgment, filed July 11, 2007 (Docket #47) ("Pl. Sur-reply"), at 4.

On July 14, 2004, Abreu went to the jail's clinic and sat on a bench while awaiting the doctor. See Declaration in Opposition to Defendants' [sic] Motion for Summary Judgment, filed Mar. 19, 2007 (Docket #41) ("Abreu Dec."), ¶ 4; Deposition of Carlos Abreu, dated Nov. 7, 2006 ("Abreu Dep.") (annexed as Ex. C to Declaration of Vivian Najib, dated Feb. 5, 2007 (attached to Def. Mot.) ("Najib Dec.")), at 52. As Nicholls and another officer were looking though a door and laughing, the waiting inmates tried to see what the officers were laughing about. See Abreu Dec. ¶ 5; Abreu Dep. at 52, 59. Nicholls told the inmates, "Don't look over at us," to which Abreu responded, "I'm just looking." See Abreu Dec. ¶ 6; Abreu Dep. at 53. Some moments later, Nicholls said to Abreu, "I told you not to look at me." See Abreu Dec. ¶ 6; Abreu Dep. at 53.

Nicholls then took out a rubber-headed "hammer"[1] from an office desk and stood in front of Abreu. See Abreu Dec. ¶ 6; Abreu Dep. at 53, 66-69. Nicholls said, "Didn't I tell you not to look at me," to which Abreu responded, "I'm not from this prison, I come from the state." See Abreu Dec. ¶ 7; Abreu Dep. at 53, 71. Nicholls queried, "And?" and Abreu replied, "No,

---

[1] Abreu explained:

> [T]he head is like made of rubber, black. It's – I didn't notice the handle, as well, but I definitely noticed the rubber head. It might have been entirely made of rubber. It's the kind of hammer they use for the windows. They use it to check doors and things. That's how they call it, the check hammer.

Abreu Dep. at 67.

nothing, I come from the state." See Abreu Dec. ¶ 7; Abreu Dep. at 53, 65-66. Nicholls then "began to press the hammer to [his] forehead." Abreu Dep. at 53. Nicholls "didn't hit [him] at all" with the hammer. Abreu Dep. at 72.[2]

While the hammer was pressed to his head, Nicholls told Abreu, "Come on, do what ever you want," but Abreu did not respond because the other inmates urged him to stay silent. See Abreu Dec. ¶ 8; Abreu Dep. at 53-54, 65-66, 73. Nicholls pressed the hammer into his head between one and five times and his head went "half way" backwards. See Abreu Dep. at 74. After one to two minutes, Nicholls removed the hammer from his forehead and put it back into the desk. See Abreu Dec. ¶ 9; Abreu Dep. at 54, 73.

While returning to the cell block, Abreu had a strong headache, felt very dizzy as if he had the flu, and had some redness on his forehead. See Abreu Dec. ¶ 9; Abreu Dep. at 54, 81. He was given some Tylenol by another inmate. See Abreu Dec. ¶ 9; Abreu Dep. at 55, 79-80. As a result of the incident, he has had chronic headaches, has been unable to sleep, began treatment for "mental health issues," sees "flashes," blacks out, and suffers from depression. See Abreu Dec. ¶ 13; Abreu Dep. at 56, 86-87. Abreu has also reported that he "start[ed] to suffer [from] confusion; severe headache; and excessive drowsiness; very dizzy; and [] disturbance of

---

[2] While Abreu has now submitted documents in which he states that Nicholls "hit" him with the hammer, see Abreu Dec. ¶ 7, 13; Plaintiff's Memorandum of Law in Opposition to Defendants' [sic] Motion for Summary Judgment, filed Mar. 19, 2007 (Docket #40) ("Pl. Mem."), at 5; Brief in Opposition to Defendants' [sic] Summary Judgment Motion, filed Mar. 19, 2007 (Docket #42) ("Pl. Br."), at 3, "[i]t is beyond cavil that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.'" Bickerstaff v. Vassar Coll., 196 F.3d 435, 455 (2d Cir. 1999) (quoting Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996)), cert. denied, 530 U.S. 1242 (2000). Accord Abato v. New York City Off-Track Betting Corp., 2007 WL 1659197, at *7 (S.D.N.Y. June 7, 2007).

normal visions." See Sur-reply at 7-8.

About a week later, on July 20, 2004, Abreu again had a headache, felt dizzy, and had a throat problem like the flu. See Abreu Dec. ¶ 10; Abreu Dep. at 96-98. He got a pass to go to the clinic, but Nicholls was there and did not let him in. See Abreu Dep. at 101 ("she told me . . . that I wasn't going to be allowed in"); id. at 102 ("as soon as she saw it was me, she told me to leave, to go back."); accord Abreu Dec. ¶ 10. Abreu did not describe his symptoms to Nicholls because he felt that that information should only be told to a nurse or doctor. See Abreu Dep. at 102.

Abreu tried again to go to the clinic the next day, but Nicholls again did not allow him to receive medical treatment. See id. at 97 ("And when I returned [the] next day she was there again and she denied my treatment, she did the same thing."); accord Abreu Dec. ¶ 10 ("[The] next day I tr[ied] again to receive medical care . . . and the defendant with a deliberate indifference deni[ed] me access to the clinic. Without [my doing anything] wrong to [her], she g[a]ve me [an]other direct order to go back to my block.").

B. Procedural History

Abreu filed his complaint on September 30, 2004. See Complaint (Docket #2). Abreu made a motion for a default judgment on December 1, 2005 (Docket #8), which was granted based on the existence of a Clerk's Certificate of default. See Default Judgment, filed Mar. 1, 2006 (Docket #9). That judgment was subsequently vacated by an Order, filed Mar. 13, 2006 (Docket #11), on the ground that the only affidavit of service in the case (Docket #4) did not reflect that service had been properly made. After Nicholls submitted papers indicating that she had not been served and was unaware of the suit, see Defendant Correction Officer Nicholls'

4

Memorandum of Law in Opposition to the Motion for a Default Judgment, filed Apr. 19, 2006 (Docket #16), at 2, 4; Declaration of Vivian Najib, filed Apr. 19, 2006 (Docket #17), the motion for a default judgment was denied. See Adoption of Report and Recommendation, filed Aug. 24, 2006 (Docket #26).

Nicholls has now moved for summary judgment under Fed. R. Civ. P. 56. See Def. Mot.; Def. 56.1; Statement Pursuant to Rule 56.2, dated Feb. 5, 2007 (attached to Def. Mot.); Najib Dec. Nicholls argues that Abreu's claims of mental harm are barred under 28 U.S.C. § 1997e(e) without a showing of physical injury and, even if not barred, no juror could find them to be caused by Nicholls's conduct. See Defendant Correction Officer Nicholls' Memorandum of Law in Support of Her Motion for Summary Judgement, filed Feb. 20, 2007 (Docket #37) ("Def. Mem."), at 3-5, 12-13. She also contends that Abreu cannot establish that she used excessive force against him, see id. at 6-8, or that she was deliberately indifferent to his medical needs, see id. at 8-11. In addition, Nicholls argues that even if her conduct violated Abreu's constitutional rights, she is entitled to qualified immunity. See id. at 11-12. Finally, Nicholls argues that any claims Abreu might have under New York State law are barred for failure to file a timely notice of claim. See id. at 14-15.

Abreu submitted a number of documents in response. See Pl. 56.1; Pl. Mem.; Abreu Dec.; Pl. Br. Nicholls submitted a reply memorandum, see Defendant Correction Officer Nicholls' Reply Memorandum of Law in Further Support of Her Motion for Summary Judgment, filed Mar. 28, 2007 (Docket #43), to which Abreu submitted a sur-reply, see Pl. Sur-reply.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is

5

appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw "all justifiable inferences" in favor of the non-moving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails 'to make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine

factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

III.  DISCUSSION

    A. Federal Claims

It is unnecessary to reach Nicholls's arguments regarding 28 U.S.C. § 1997e(e), causation, or qualified immunity inasmuch as Abreu's evidence does not show the existence of any constitutional violation.  To assert a claim under 42 U.S.C. § 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution or federal law by a defendant acting under the color of state law.  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 does not grant any substantive rights, but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or federal statutes.  See Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240 (1994).  Here it is undisputed that Nicholls was acting under color of law.  The only question is whether Abreu has shown that she committed a violation of the Federal Constitution: specifically, the Eighth Amendment's prohibition on cruel and unusual punishment.

        1. Excessive Force Claim

To establish an Eighth Amendment violation based on a claim of excessive force, "an inmate must meet both an objective and a subjective requirement."  See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999).  To meet the subjective requirement, the inmate must show that the prison officials involved "had a 'wanton' state of mind when they were engaging in the alleged misconduct."  See Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994) (quoting Hudson v.

McMillian, 503 U.S. 1, 7 (1992)). "[T]he 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999) (quoting Hudson, 503 U.S. at 7). "Thus, the key inquiry under Hudson and its precedents is whether the alleged conduct involved unnecessary and wanton infliction of pain." Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (citing Davidson, 32 F.3d at 30) (internal quotation marks omitted).

> Courts in this circuit have held that
>
> although the subjective component is "inherently an inquiry into [the] defendant's state of mind, plaintiff need not offer particular evidence of defendant's mental state. For purposes of opposing defendant's summary judgment motion, plaintiff has satisfied his burden on this element by merely pleading a scenario in which the use of force could not have been in good faith."

See Watson v. Delgado, 2006 WL 1716869, at *5 (S.D.N.Y. June 20, 2006) (quoting Santiago v. Campisi, 91 F. Supp. 2d 665, 673 (S.D.N.Y. 2000)); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind.").

To meet the objective requirement, "the alleged violation must be 'sufficiently serious' by objective standards." See Griffin, 193 F.3d at 91 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The objective component is "context specific, turning upon 'contemporary standards of decency.'" See Blyden, 186 F.3d at 263 (quoting Hudson, 503 U.S. at 8). "[T]he malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] per se . . . whether or not significant injury is evident.'" Griffin, 193 F.3d at 91 (quoting Blyden, 186 F.3d at 263). However, "the Eighth Amendment's prohibition against cruel and unusual punishment

8

does not extend to de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Sims, 230 F.3d at 22 (internal quotation marks and citations omitted); accord United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In this case, Abreu claims that Nicholls took out a rubbed-headed hammer from an office desk and pressed it against his forehead. See Abreu Dec. ¶¶ 6, 7, 13; Abreu Dep. at 53, 67-69. He claims that Nicholls pressed between one and five times and his head went "half way" backwards and that she kept the hammer against his forehead for one to two minutes. See Abreu Dec. ¶¶ 7, 13; Abreu Dep. at 53-54, 72-74. These actions on their face are not actions "sufficiently serious" to constitute a violation of the Eighth Amendment's ban on cruel and unusual punishment. Indeed, case law reflects that conduct of even greater seriousness than this has been found to be de minimis and non-actionable under § 1983. See, e.g., Boddie, 105 F.3d at 862 (prisoner allegedly was "bumped, grabbed, elbowed, and pushed"); Virella v. Pozzi, 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (officer swung keys at plaintiff, making contact with his head and causing a bump); Cunningham v. Rodriguez, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002) (prisoner "hit [] in the back and face," which resulted in muscle pain); Espinal v. Goord, 2001 WL 476070, at *13 (S.D.N.Y. May 7, 2001) (plaintiff hit in the face two or three times, making his face turn red); Santiago, 91 F. Supp. 2d at 674 (open-handed slap); Sprau v. Coughlin, 997 F. Supp. 390, 394 (W.D.N.Y. 1998) (officer struck plaintiff several times across the neck and face, and plaintiff suffered a small bump under the eye); Yearwood v.

LoPiccolo, 1998 WL 474073, at *7 (S.D.N.Y. Aug. 10, 1998) (choking plaintiff, punching him in the lip and hitting him with keys). Because Nicholls's conduct is de minimis, it was not in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

        2. Deliberate Indifference

To establish a violation of the Eighth Amendment arising out of inadequate medical treatment, a prisoner is required to prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The deliberate indifference standard consists of both an objective and a subjective prong. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) ("Hathaway I"), cert. denied, 513 U.S. 1154 (1995).

Under the objective prong, the alleged medical need must be "sufficiently serious." Id. (internal quotation marks and citation omitted). A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. (internal quotation marks and citation omitted). "Factors that have been considered include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).

Under the subjective component, the prisoner must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving the prisoner of adequate medical treatment. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "[T]he subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will

result.'" Id. (alterations in original) (quoting Farmer, 511 U.S. at 835); see Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (likening the necessary state of mind to "the equivalent of criminal recklessness") (internal quotation marks and citation omitted); Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (per curiam) (same).  In order to be found "sufficiently culpable," the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

      Turning to the objective prong, Abreu's complaints at the time he visited the clinic – of a headache, dizziness, and flu-like throat problems, see Abreu Dec. ¶ 10; Abreu Dep. at 96-98 – cannot be characterized as "condition[s] of urgency . . . that may produce death, degeneration, or extreme pain."  Hathaway I, 37 F.3d at 66.  Case law reflects that similar or more significant symptoms are insufficient to meet this threshold.  See, e.g., Ford v. Phillips, 2007 WL 946703, *12 & n.70 (S.D.N.Y. Mar. 27, 2007) (abrasions, minor bruise, bleeding, scratches, blood in the urine, vomiting blood, persistent abdominal and groin pain, headaches and dizzy spells); Qader v. New York, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (dizziness and "terrible headache"); Hutchinson v. New York State Corr. Officers, 2003 WL 22056997, at *5 (S.D.N.Y. Sept. 4, 2003) ("digestion problems, weight loss, and dizziness"); Gowins v. Greiner, 2003 WL 943239, at *3 n.1 (S.D.N.Y. Mar. 10, 2003) ("headaches and night sweats"); Gill v. Jones, 2001 WL 1346012, at *7 (S.D.N.Y. Nov. 1, 2001) ("headaches, earaches and dizziness" and "facial

11

bruising"). Thus, the deliberate indifference claim fails for this reason alone.[3]

### B. Potential State Law Claims

Read liberally, Abreu's papers may be construed as asserting a claim against Nicholls for assault. Abreu also mentions N.Y. Correction Law § 137(5), which provides that "no officer or other employee of the department shall inflict any blows whatever upon any inmate," see Pl. Sur-reply at 29, and N.Y. Correction Law § 70(2)(c), which provides that "the department may establish and maintain any type of institution or program of treatment . . . with due regard to [t]he health and safety of every person in the custody of the department." See Pl. Sur-reply at 40. Nicholls argues that any claim under state law must be dismissed because Abreu failed to file a notice of claim as required by state law. See Def. Mem. at 14-15.

New York General Municipal Law § 50-e(1)(b) requires an individual to serve a notice of claim before filing an action for damages against a municipal corporation or its employee. See N.Y. Gen. Mun. L. §§ 50-e and 50-i.[4] Defendants assert that Abreu has not filed such a

---

[3] In addition, Abreu cannot meet the second, subjective prong of the test. He does not suggest that there were any outward manifestations of his symptoms. See Abreu Dec. ¶ 10 ("I was feeling sick with headache, feeling of dizzy, throat problem like influenza (flu) and [] symptoms very [strange]"). He also admits that he did not tell Nicholls of his condition. See Abreu Dep. at 102-03. Therefore, it cannot be said that Nicholls "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

[4] Section 50-e(1)(b) states that "[i]f an action or special proceeding is commenced against [an officer, appointee or employee of a public corporation], but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law." It is settled that "'[a] public corporation has a statutory obligation to indemnify if the officer, appointee or employee was acting within the scope of his or her employment in committing the alleged tortious acts.'" Houghton v. Cardone, 295 F. Supp. 2d 268, 280 (W.D.N.Y. 2003) (quoting Smith v. Scott, 294 A.D.2d 11, 19 (2d Dep't 2002)). Because "there is no suggestion" that Nicholls was "acting outside the scope of [her] employment when [she] performed the acts in question, . . . the notice of claim requirement

notice of claim, see Najib Dec. ¶ 3, and Abreu does not contend otherwise.  The state notice-of-claim requirement applies to state law claims when the state law claims are brought in federal court.  See Felder v. Casey, 487 U.S. 131, 151 (1988); Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).  Where no notice of claim has been filed, state tort claims are routinely dismissed.  See, e.g., Grennan v. Nassau County, 2007 WL 952067, at *17 (E.D.N.Y. Mar. 29, 2007) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.") (quoting Warner v. Village of Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003)); Fincher v. County of Westchester, 979 F. Supp. 989, 1002-03 (S.D.N.Y. 1997) (citing Brown v. New York City Transit Auth., 172 A.D.2d 178, 180 (1st Dep't 1991)); see also Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1234-35 (S.D.N.Y. 2003) (dismissing alleged violation of N.Y. Correction Law § 137(5) for failure to file a notice of claim).  Accordingly, Abreu's state law claims are barred.

      C.  Evidentiary Hearing and Further Discovery

Abreu requests a hearing to explain his arguments more effectively than he can in his reply papers.  See Sur-reply at 5 (citing Hudson v. Hardy, 412 F.2d 1091, 1095 (D.C. Cir. 1968) (an evidentiary hearing may be a "fairer and a more economical" method of considering a prisoner's claims than appointing counsel); Harris v. Pate, 440 F.2d 315, 318-19 (7th Cir. 1971)).  The Court need not reach the question of whether such a hearing would ever be proper inasmuch as Abreu has been given ample opportunity to present his case.  Abreu filed voluminous papers in opposition to the motion and was permitted to submit a sur-reply.  While the Court directed

---

applies to [her] as well." Id.

that the sur-reply be limited to "matters newly raised in the defendant's reply brief," and "not exceed 10 pages," see Memorandum Endorsed Order, dated Apr. 30, 2007 (Docket #45), Abreu filed a 57-page submission, all of which has been considered by the Court. Abreu's submissions are lengthy, detailed, and clear. Therefore, there is no need for a hearing.

Abreu also asserts that Nicholls has been deficient in her discovery responses. See Pl. Sur-reply at 15. While Fed. R. Civ. P. 56(f) contemplates that a party opposing summary judgment may obtain a continuance to obtain discovery, that rule "applies to summary judgment motions made before discovery is concluded." McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 696 n.5 (S.D.N.Y. 1999) (emphasis added); accord Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 229 n.1 (S.D.N.Y. 2003); McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995) ("Applications to extend the discovery deadline must be made prior to expiration of the deadline . . . . Rule 56(f) is not intended to circumvent discovery orders."). Here the discovery deadline was November 6, 2006, see Order, filed July 7, 2006 (Docket #23), ¶ 7, and any complaints about discovery were required to be brought to the Court's attention prior to that date, see id., ¶ 13. Abreu never previously made any complaint to the Court regarding the discovery process. Because Abreu had the opportunity to conduct discovery and to obtain court relief with respect to any alleged insufficient responses by Nicholls, his request to obtain additional discovery now should be denied.[5]

---

[5] Moreover, under Fed. R. Civ. P. 56(f):

a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are

Conclusion

  The defendant's motion for summary judgment (Docket #36) should be granted.

**PROCEDURE FOR FILING OBJECTIONS TO THIS**
**REPORT AND RECOMMENDATION**

  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah A. Batts, 500 Pearl Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Batts. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

---

  reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (internal punctuation and citations omitted). Abreu has not made a submission that complies with any of these elements. In any event, it is obvious that Abreu could never meet the second element inasmuch as the factual basis for granting summary judgment rests entirely on matters within Abreu's own knowledge.

Dated: July 24, 2007
       New York, New York

                                                  _____
                                                  GABRIEL W. GORENSTEIN
                                                  United States Magistrate Judge

Copies sent to:

Carlos Abreu
99-A-3027
Attica Correctional Facility
Exchange Street
Attica, New York 14011-0149

Vivian Najib, Esq.
Assistant Corporation Counsel
100 Church Street
New York, NY 10007

Hon. Deborah A. Batts
United States District Judge

Conclusion

The defendant's motion for summary judgment (Docket #36) should be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah A. Batts, 500 Pearl Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Batts. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: July 24, 2007
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (internal punctuation and citations omitted). Abreu has not made a submission that complies with any of these elements. In any event, it is obvious that Abreu could never meet the second element inasmuch as the factual basis for granting summary judgment rests entirely on matters within Abreu's own knowledge.

15